### WHITIN MACH. WORKS v. HOUGHTON.†

(Circuit Court of Appeals, First Circuit. April 6, 1910.)

No. 832.

1. PATENTS (§ 167*)—CONSTRUCTION—RIGHT TO EQUIVALENTS.

The facts that the specification of a patent describes two forms of one element of the combination which may be used in the alternative, while a claim describes but one of such forms, does not preclude the patentee from invoking the doctrine of equivalents as to the alternative form.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 328*)—INFRINGEMENT—THREAD GUIDES FOR SPINNING MACHINES.

The Houghton reissued patent, No. 12,263 (original No. 753,577), for improved thread guides for spinning or twisting machines, claim 3 construed, and *held* infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by Lewis T. Houghton against the Whitin Machine Works. Decree for complainant, and defendant appeals. Affirmed. See, also, 161 Fed. 581; 153 Fed. 740.

William A. Jenner, for appellant.

William K. Richardson and Louis W. Southgate, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. This second appeal raises the single question whether the modified structure now made by the defendant (now the appellant), and designated as Whitin C, infringes the third claim of the Houghton patent.

Upon the prior appeal the defenses were:

First. That claims 1, 2, 3, and 4 of the Houghton patent were void for want of invention in view of the prior art.

Second. That the defendant's device did not infringe claim 4.

As to the first defense, this court held that claims 1, 2, 3, and 4 of the Houghton patent were valid; that the Houghton invention involved

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied May 26, 1910.

something more than the mere change from wood to metal, or the substitution of one material for another; that it represented in fact a distinct advance in the art; that the prior patented devices which employed metal in place of wood were practical failures; that the Houghton device was the first device to remedy the defects in the old wooden finger-heads which were still in general use; that it was a commercial success; and that for these reasons the patent was entitled to a liberal construction.

As to the second defense, this court held that claim 4 was not limited to the form of hinge set forth in the claim, which was described as "integrally bent or turned tongues which intermesh with bent or turned tongues extending from the sheet-metal strip to form hinged joints," and that the claim covered as an equivalent the defendant's hinge, which did not contain these interlocking features. In other words, this court held, in substance, that the claims of the Houghton patent were entitled to a reasonably broad application of the doctrine of equivalents.

The opinion of the court on the first appeal is found in 153 Fed. 740, 83 C. C. A. 84. In the course of the opinion, Judge Aldrich, speaking for the court, said:

"Though the patent is for an improved thread-guide and an improved thread-guide support, rather than for a new and original discovery, its practical success is such as to entitle it to favorable consideration, and to relieve it in a measure from the operation of the narrow rules of construction which ordinarily apply to patents for improvements which only slightly advance the art, and accomplish only unimportant and inconsiderable results. * * *

"In the older practical constructions in use we had the necessary wooden finger-heads and the necessary soft metal thread-guides with the inherent defects of insecurity of such appliances in respect to accuracy of continued adjustment. This situation was at once relieved by Houghton, because he made it possible to change the thread-guide from soft to hard wire, and the finger-heads from wood to metal securely hinged and properly adjusted to a vertical strip firmly secured to the vertical face of a doffing-rail. Houghton's adaptation thus relieved the situation from the necessity of using wooden finger-heads and soft metal guides, and permitted an accurate adjustment of metal parts at the outset, and under such conditions as to secure continued accuracy of position in operation. This, we think, constituted a very positive advance in the practical art of cotton spinning and twisting.

"Quite likely the substitution alone of one material for another would not amount to invention, but the successful adaptation of the metal finger-head which made the use of highly tempered thread-guides possible is something to be considered in connection with the other elements of the combination upon the question as to whether what he did amounted to invention. * * *

"As to the prior art, it is sufficient to say that it falls far short of anticipating Houghton's conception and efficient adaptation, or of accomplishing anything like the satisfactory commercial results reached through what Houghton described. * * *

"In conclusion, as to infringement. It is not seriously contended, even if denied, that claims 1, 2, and 3 are not infringed; and, as to claim 4, the defendant's leading expert, Mr. Livermore, states that the defendant's construction, broadly considered as a hinge, is an equivalent, or mechanical substitute, for the construction shown in Houghton's claim 4 of the reissue. This, in connection with an examination of the various parts and their function as used in the defendant's construction, and the other evidence in the case, satisfies us that the complainant establishes that the defendant used the Houghton idea, and that there was infringement in respect to claim 4, as well as to claims 1, 2, and 3."

Upon further consideration of the Houghton patent and the prior art on this appeal, we see no reason to question the soundness of these conclusions.

We do not think that the comparative simplicity of the Houghton structure, or the circumstance that it resembles in form the old wooden finger-heads, in any way detracts from the merits of the invention. Practical inventions of great merit are often based upon comparatively simple changes in form or material. And in this connection it should be borne in mind that the various prior attempts in more complicated structures to use metal in place of wood, as exhibited in some seven or eight patents, had proved failures, and that the Houghton device was the first successful attempt to remedy the defects in the old wooden finger-head. And upon this point it is also significant that the defendant's alleged infringing finger-heads have been modifications, first in one particular and then in another, of the Houghton structure.

The question of infringement now before the court differs in one respect from the question of infringement on the first appeal. On the first appeal the question was whether claim 4 included as equivalents other forms of hinge, while on this appeal the question is whether claim 3 includes as an equivalent the alternate form of stop described by Houghton in his specification.

Claim 3 reads as follows:

"3. In a thread-guide support for spinning or twisting machines, the combination of a rail or supporting piece, and a plurality of sheet-metal finger-heads, each formed from a piece of sheet metal bent to form a top plate, and bent-down portions which engage the vertical face of the rail or supporting-piece forming stops for holding the finger-heads in horizontal position."

With respect to the last element in this claim, which relates to the side flanges or stop device, the specification says:

"In the construction herein illustrated the side flanges 15 of each finger-head form stops for holding the finger-head in its normal horizontal position. In some cases, however, it may be desirable to provide other stops for this purpose, and to accomplish this the strip 10 may have fingers or sections 17 cut therefrom, such sections or fingers 17 being preferably turned or bent up from the sheet-metal strip 10, as illustrated in Fig. 1. The stops 17 as thus constructed may be employed in addition to the side flanges 15 for holding the finger-heads horizontal or may be used in place of said side flanges when it is desired to employ a less amount of metal in each of the finger-heads."

In defendant's Whitin C are found all the elements of claim 3 except the last, where, in place of side flanges which engage the vertical face of the rail or supporting piece, it employs, as stops, fingers which are made by turning up the ends of the leaf of the hinge, or short strip, which supports the finger-head; in other words, it employs stops which correspond substantially with the "fingers 17," as set forth in the Houghton specification.

The main contention of the defendant is that if a patentee in describing one feature of his invention, as, for example, a stop, says that it may consist of two forms, and in his claim he describes only one form, his claim is thereby limited to that form, and cannot be construed to cover the other form as an equivalent.

In the able and exhaustive brief of defendant's counsel this proposition is stated as follows:

"It makes no difference whether the fingers 17 are equivalents for the side-flanges as stopping devices, nor whether the result in each case is the same, nor whether the specification states that they may be used as alternatives, there was the description and picture of section 17 before his eyes, and he omitted to claim them, or to shape the language of claim 3 so as to include them in its terms."

In support of this proposition the defendant cites section 4888, Rev. St. (U. S. Comp. St. 1901, p. 3383), and a long list of cases, from which it is sufficient to refer to the language of the Supreme Court in Miller v. Brass Company, 104 U. S. 350, 352, 26 L. Ed. 783:

"The claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or, if his, he dedicates it to the public."

While the rule laid down in Miller v. Brass Company and many other cases cited by the defendant has long been recognized, we do not think it has any application to the case at bar.

This is not a case where the patentee, having failed to include in his claim a feature of his invention described in his specification, is seeking to have that feature read into his claim; but it is a case where the claim includes one form of the feature described in the specification, and where the only question is whether the claim does not also cover, under the doctrine of equivalents, the equivalent form described in the specification.

Since Houghton, as to this claim, is entitled to invoke the doctrine of equivalents, it would, indeed, be an anomalous application of that doctrine to hold that the form of stop which he describes in his patent as an equivalent form to that specified in his claim should not be considered as an equivalent because it is described in his specification, although it would plainly be such if it were not described in his specification. Such a proposition is opposed to reason and common sense, and the defendant has failed to cite any authority in support of it. The cases relied on by defendant apply to a situation in which a patentee seeks to enlarge the scope of his patent beyond what is covered by the claims by incorporating into the claims some element or feature which is described in the specification. For example, if Houghton had not included in claim 3 the stop feature, it could not be read into the claim simply because it was described as a part of his invention in his specification.

The second main proposition upon which the defendant relies is as follows:

"Assuming claim 3 to cover 'fingers or sections 17' and the strip 10 to be out of the claim, and therefore assuming 'fingers or sections 17' and individual hinges to be expressed in the claim, there would not be a shred of novelty in it."

Strip 10 is not specifically made an element in claim 3, but is specifically made an element in claims 1 and 2. Hence this proposition is in substance an attack upon the validity of claim 3 unless the claim is limited to the specific form of stop therein described; in other words, it is an attack upon the validity of claim 3 if it is held to include "stop 17" as an equivalent form of stop.

This contention is based upon the following propositions, which it is asserted cannot be refuted:

"(1) Finger-heads individually hinged in a rank were old.

"(2) Sheet-metal as a material for finger-heads was old.

"Substitution of well known material for another well known material without change in result is not patentable.

"(3) Houghton's shape was old.

"(4) The open-bottom box form was old.

"(5) Sheet-metal finger-heads with side flanges were old.

"(6) Forms adapted to use hard-tempered wire were old.

"(7) Forms adapted to employ guide-wires, having all the adjustments of which Houghton's is capable, were old.

"(8) The combination in a single structure of all Houghton's elements (if the strip is omitted) was old."

In support of these several propositions the defendant refers to prior patents. If we assume that the first seven features here mentioned are to be found in prior patents—that is, one feature in one patent and another feature in another patent, or substantially this—it would not in any way affect the validity of the combination covered by claim 3 of the Houghton patent. Under a familiar and well-settled rule the patentable novelty of combination claims cannot be overthrown in this way.

The eighth proposition, which declares that "the combination in a single structure of all Houghton's elements (if the strip is omitted) was old," is based upon the Burt & Duval Patent, No. 421,237, of 1890. The Burt & Duval patent is manifestly not an anticipation of the Houghton device. That patent shows a cast metal cylindrical "guide arm," M, with a rod cast thereon which engages a grooved portion of a clamp plate secured to the vertical face of the rail. A cast metal cylindrical finger-head, "provided with a cylindrical bore" in which the thread guide is fitted, is certainly far removed from Houghton's sheet-metal finger-head.

With respect to the prior art, we can only repeat that the more it is examined and considered the greater appears to be the merit of Houghton's simple, practical metallic device constructed largely along the same lines as the old wooden finger-heads, which still continued in general use down to the time of his invention.

In the structure which was before the court on the first appeal the defendant substituted another form of hinge for the Houghton hinge.

In Whitin C now before the court the defendant has returned to the Houghton form of hinge, but has modified the Houghton structure in two other particulars. Instead of employing a long vertical metallic strip, the defendant has provided a short vertical metallic strip for each finger-head; and, instead of employing the side flanges of the finger-heads as stops, it employs stops turned out from the vertical strip which supports the finger-head, this being substantially the same as the equivalent form of stopping means shown in the Houghton patent.

In both the defendant's structures which have been before this court the defendant has retained the substance of the Houghton invention.

The decree of the Circuit Court is affirmed, with costs of this court.